**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| DONALD WATHNE | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| DEWOLFF, BOBERG & | ) | **COMPLAINT** |
| ASSOCIATES, INC., LOUIS DEWOLFF, | ) | (JURY TRIAL DEMANDED) |
| LEON ZEBROSKI and | ) | |
| MICHAEL OWENS | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

The Plaintiff, complaining of the Defendants, alleges as follows:

1.      The Plaintiff is a citizen and resident of the State of Florida and at all times relevant hereto was a stockholder of the Defendant, DeWolff, Boberg & Associates, Inc.

2.      The Defendant DeWolff, Boberg & Associates, Inc. ("DB&A", "DBA" or "Defendant"), is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business in Charleston County, South Carolina.

3.      The Defendants Louis DeWolff, Leon Zebroski and Michael Owens are and were, at all times relevant hereto, officers and directors of DB&A.  Each is a citizen and resident of a state other than Florida.

4.      This Court has jurisdiction of this case pursuant to 28 U.S.C. §1332 because there is a diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.      DB&A is a management-consulting firm in the business of providing consulting services.

{00707107.}

6.      On or about July 1997, DB&A entered into a Stock Redemption Agreement with its shareholders, including Plaintiff (the "Stock Redemption Agreement").

7.      As of January 1, 2001, the Plaintiff owned 1500 shares of DB&A stock.

8.      Pursuant to the terms of the Stock Redemption Agreement, DB&A agreed with its shareholders that while any shareholders' stock was being purchased pursuant to the terms and provisions of the Stock Redemption Agreement, there would be no adjustment in the compensation paid by Defendant to, or other remuneration received directly or indirectly by, any of the other shareholders, including Plaintiff.

9.      Until October, 2001, Mr. Timothy Boberg occupied the office of President and Chief Executive Officer (CEO) of DB&A.  On or about October 26, 2001, a group purporting to act as the Board of Directors of DB&A purported to terminate Mr. Boberg's employment and appoint Mr. Lou DeWolff President and Chief Executive Officer (CEO) of DB&A. That action precipitated a dispute between Mr. Boberg and Mr. DeWolff, which included, but was not limited to, a dispute as to which of various versions of DB&A's bylaws were the controlling bylaws of DB&A. As part of the dispute between Mr. DeWolff and Mr. Boberg, each purported to form boards of directors to run DB&A.

10.      At the time of a purported Board of Directors meeting of DB&A on October 26, 2001, Mr. DeWolff's "board" purported to issue 1,275 of authorized but un-issued DB&A shares to various persons. The Plaintiff is informed and believes that the purpose of issuing this stock in this manner was so that Mr. DeWolff's supporters among the stockholders would thereby have a majority of the stock in DB&A.

11.      The Plaintiff is informed and believes that DB&A's purported issuance of the 1,275 shares violated the Stock Redemption Agreement.

12.     Beginning some time in 2002, unbeknownst to the Plaintiff, the Defendants began to hold back monies and not distribute them to the company's shareholders as they had always done in the past. Over the course of time the Defendants accumulated $5,000,000 or more in monies that belonged to the company's shareholders, but which the Defendants refused to distribute.

13.     During the course of and during the aftermath of the fight to control DB&A between Mr. DeWolff and Mr. Boberg, DB&A, DeWolff, Zebroski and Owens embarked upon a deliberate course of oppression and unfair dealing with the Plaintiff.  Defendants' actions include but are not limited to:

    a.  Issuing stock in violation of its Stock Redemption Agreement in order to provide majority control of DB&A stock to supporters of DB&A's management;

    b.  Agreeing to pay and paying to Mr. DeWolff and to Mr. Boberg substantial sums as reimbursement for attorneys' fees incurred in their fight for the control of DB&A.]

    c.  Retaining monies that should have been distributed to the Plaintiff and holding those funds for the benefit of the Defendants and other similarly situated shareholders whose shares were not in the process of being redeemed.

14.     At the time of the October stock distribution and during the retention of monies described paragraph 12, the Plaintiff was no longer employed by DBA and his stock was being redeemed pursuant to the provisions of the Stock Redemption Agreement.

15.     The Defendants' retention of monies was a breach of the Plaintiff's rights under the Stock Redemption Agreement.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Stock Redemption Agreement)

16.    The Plaintiff re-alleges the allegations contained in Paragraphs 1 through 15 as if fully set forth herein.

17.    Defendants have breached the Stock Redemption Agreement with the Plaintiff.

18.    Plaintiff has performed his obligations under the Stock Redemption Agreement.

19.    As a result of Defendants' breach of the Stock Redemption Agreement, Plaintiff has been damaged, including, without limitation, by the reduction in distributions made to him as a stockholder of DBA.

20.    At all times Defendants have owed the Plaintiff the duties of fiduciaries, including but not limited to, a duty of good faith and fair dealing.

21.    Defendants have acted in bad faith in its dealings with the Plaintiff and have breached their fiduciary duties to Plaintiff.

22.    The Plaintiff is entitled to judgment against Defendants for his actual damages, plus interest at the statutory rate, arising from Defendants' breach of the Stock Redemption Agreement, all in amounts to be determined by the trier of fact.

## FOR A SECOND CAUSE OF ACTION
### (Conversion)

23.    The Plaintiff re-alleges the allegations in Paragraphs 1 through 22 as if fully set forth herein.

24.    As set forth more fully above, DB&A has unlawfully misappropriated, withheld and/or converted the Plaintiff's share of DB&A earnings.

25.    Defendants have engaged in the unauthorized assumption and exercise of the right of ownership over the Plaintiff's share of DB&A earnings.

26.     Such assumption and exercise by Defendant has led to the exclusion of the Plaintiff's rights in his share of DB&A earnings.

27.     Defendant has wrongfully detained Plaintiff's share of DB&A earnings, by refusing to surrender the possession of the same despite demand for possession by Plaintiff.

28.     At the time of Defendant's conversion of the Plaintiff's share of DB&A earnings, Plaintiff held the right to possession of the Plaintiff's share of DB&A earnings.

29.     To the extent that DB&A has not properly distributed its earnings to the Plaintiff as set forth above, Plaintiff is entitled to a judgment for the difference between the amount he actually received and the amount he was and is entitled to receive plus punitive damages.

**FOR A THIRD CAUSE OF ACTION**
(**Breach of Fiduciary Duty**)

30.     The Plaintiff re-alleges the allegations in Paragraphs 1 through 29 as if fully set forth herein.

31.     Plaintiff is informed and believes that Defendants have caused a substantial part of DB&A's assets to be misapplied, misused or misappropriated to the detriment of Plaintiff.

32.      As alleged herein, the actions taken by these officers and directors were not taken in good faith with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and were not undertaken by these officers and directors in a manner they reasonably believed to be in compliance with DBA's contract with the Plaintiff, as a shareholder of DB&A.

33.     These actions as alleged herein demonstrate a lack of good faith on the part of these officers and directors in carrying out their common law and statutory duties to DB&A and the Plaintiff, and further demonstrate conduct that is disloyal, unconscionable, dishonest and fraught with self-dealing.

34. As a result of these actions, Defendants, DeWolff, Zebroski and Owens have breached their common law and statutory duties as a fiduciary officers and directors of DB&A as provided in § 33-8-420 and § 33-8-300(a) of the South Carolina Code of Laws.

35. As a result of these actions, Plaintiff, as a shareholder in DB&A, has suffered an injury in that the misapplication, misuse and misappropriation of the assets of DB&A have resulted in a depreciation in the value of the Plaintiff's shares of stock in DB&A.

36. Plaintiff is entitled to damages for these injuries in an amount to be determined by the trier of fact plus punitive damages.

WHEREFORE, the Plaintiff demands judgment against Defendants for the following:

1. Plaintiff's actual damages, in an amount to be determined by the trier of fact;

2. Punitive Damages, in an amount to be determined by the trier of fact;

3. Interest;

4. Payment in the amount of the difference between that to which Plaintiff has been entitled by law and that which he has actually received from DB&A, plus such prejudgment interest as has accrued thereon at the legal rate;

5. Such other relief as the Court shall deem appropriate.

S/William C. Cleveland
William C. Cleveland (Fed ID No. 179)
Buist, Moore, Smythe & McGee, P.A.
5 Exchange Street, P. O. Box 999
Charleston, South Carolina  29402
(843) 722-3400

Stanley C. Rodgers (Fed ID No. 5758)
68 Queen St.
Charleston, South Carolina  29401
(843) 958-9881

Attorneys for Plaintiff Donald Wathne

July 14, 2005
Charleston, South Carolina

{00707107.}